UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHAWN E. ALI,

        Plaintiff,        CIVIL ACTION NO. 12-cv-10837

vs.

        DISTRICT JUDGE DAVID M. LAWSON

COMMISSIONER OF        MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Shawn Ali seeks judicial review of Defendant the Commissioner of Society Security's determination that he is not entitled to social security benefits for his impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 9) and Defendant's Motion for Summary Judgment (docket no. 12). The motions have been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 3.) The Court has reviewed the pleadings, dispenses with a hearing, and issues this report and recommendation pursuant to Eastern district of Michigan Local Rule 7.1(f)(2).

**I.    RECOMMENDATION:**

This Court recommends that Plaintiff's Motion for Summary Judgment (docket no. 9) be DENIED and that Defendant's Motion for Summary Judgment (docket no. 12) be GRANTED.

**II.    PROCEDURAL HISTORY:**

Plaintiff filed an application for Disability Insurance Benefits and an application for Supplemental Social Security Income with protective filing dates of March 23, 2009, alleging that

he had been disabled since June 20, 2009, due to degenerative disc disease and disc herniation. (TR 94-101.) The Social Security Administration denied benefits. (TR 73, 77.) Plaintiff requested a *de novo* hearing, which was held via video conference on March 28, 2011, before Administrative Law Judge (ALJ) T. Patrick Hannon, who subsequently found that the claimant was not entitled to Disability Insurance Benefits because Plaintiff was capable of performing a significant number of jobs in the national economy. (TR 12-18.) The Appeals Council declined to review the ALJ's decision (TR 1), and Plaintiff commenced the instant action for judicial review. The Parties each filed their respective Motions for Summary Judgment. Plaintiff then filed a Reply. (Docket no. 15.)

### III. THE HEARING, MEDICAL EVIDENCE, AND FUNCTIONAL REPORT

#### A. The Hearing

Plaintiff was 24 years old at the time of the administrative hearing and 22 years old at the time of alleged onset. (*See* TR 94.) Plaintiff testified that he hasn't worked since June 2009 because of back problems that started with two car accidents when he was 16 years old. (TR 35-36.) Plaintiff testified that he got epidural shots in his back for the pain and that he had neck surgery for his C5 discs. (TR 35-36.) He testified that he can't work because he cannot sit or stand for very long due to his back problems. (TR 38.) Plaintiff also testified that he cannot work because his medication makes him drowsy. (TR 40.)

The ALJ started Plaintiff's hearing by asking why Plaintiff had failed to show up for a state-agency consultative examination in November 2010. (TR 28.) Plaintiff testified that he was out of town in Pennsylvania; when the ALJ asked how he got there, Plaintiff testified that he rode in a car for four to six hours, but someone else drove. (TR 28-29.) The ALJ then explained to Plaintiff that while the consultative examination is important, he relies on residual-functional-capacity assessments (RFCs) from treating physicians because he finds them the most reliable. (TR 32.) The

ALJ then discussed that he had an RFC in this matter from a state source, but he informed Plaintiff and Plaintiff's counsel that he wanted an RFC from Plaintiff's treating physician, Dr. Esa Ali. (TR 33-34.) Plaintiff stated that he had seen Dr. Ali 15 to 16 times. (TR 34.)

The ALJ noted that based on the information he currently had, "claimant can't sit at least six hours, which means that he's less than sedentary, which means he wins." (TR 34.) But he stated that he wants a medical opinion from Plaintiff's treating doctor that agrees with the assessment. (TR 34.) The ALJ also noted, with regard to Plaintiff's medications, that if Plaintiff's doctor says the medications "could cause all these side effects[,] Hey, I'm going to believe him. He's a medical doctor. I'm not." (TR 40.) The ALJ then stated the following:

> . . . And that's why I rely on your doctor's assessment. And doctors give me an assessment, but you have to be disabled for at least 12 months. He hasn't given me an onset date. He hasn't told me how long it's going to last. You could be crippled one day a month, and you're still not disabled. You have to be less than sedentary for at least 12 months. And that's the missing piece on this. So what I'm going to do is I'm going to leave the record. Can you get me that within 30 days?
>
> .   .   .
>
> . . . What I'm going to ask you to do is get it that medical source statement as to the onset date and duration. And write a brief to refresh my recollection.

(TR 41.) The ALJ gave Plaintiff 30 days to provide the requested medical-source statement, offered to grant an extension if necessary, and said, "Now, if the doctor blows you off and says, 'Hey, I did it once. I'm not going to do it again,' let me know, and we'll go from there." (TR 43-44.)

The ALJ concluded the hearing by discussing Plaintiff's desire (or lack thereof) to be considered disabled:

> Well, it doesn't really matter whether you want to be disabled or not. If you're disabled, you're disabled, whether you want to be or not. I mean, it does go to credibility. But here, I've got a doctor telling me he's disabled, medically. So, sorry about your back. . . . Your position is not unreasonable."

3

(TR 45.) Although a Vocational Expert was present at the hearing (TR 24), she did not testify.

### B.     Medical Record

In September 2008, Plaintiff had surgery for a herniated disc. (TR 189, 232.) The next day, he was discharged in "excellent condition for routine followup." (TR 189.) At follow up, his doctor stated that he had "done exceedingly well" even though he had a "little bit" of pain. (TR 232.) In October 2008, Plaintiff reported to the emergency room, but he said that he hurt himself when he hit his shoulder on a piece of furniture. (TR 231.) Other than that, Plaintiff's doctor noted that he had been "doing quite well." (TR 231.)

In February 2009, Plaintiff's returned to his doctor with "a new problem," which included upper-back pain (TR 230, 260.) Because Plaintiff's surgeon at the time did not deal with thoracic herniated discs, he referred Plaintiff to a new doctor. (TR 230.) Until April 2009, Plaintiff treated with Vicodin, which he told his family physician was "working." (TR 255.) In that light, on a disability form filled out by Plaintiff's doctor on February 27, 2009, he indicated that Plaintiff should only be unable to work for 3 months, and he limited Plaintiff to carrying less than 10 pounds, standing or walking less than 2 hours, and sitting less than 6 hours. (TR 257-58.) He noted that Plaintiff should not reach, push, pull or manipulate things with his hands and arms. (TR 258.) On May 20, 2009, Plaintiff was diagnosed with lower-disc herniation. (TR 267.)

It appears that Plaintiff first treated with Dr. Ali on January 5, 2010.[1] (TR 297.) Dr. Ali indicated that Plaintiff had "a history of chronic neck and back pain." (TR 297.) He noted that following his initial surgery in September 2008, and "[o]nce he completed his interventional pain management, he actually did well with oral pain medications." (TR 297.) Dr. Ali then indicated that

---

[1] Plaintiff's history with Dr. Ali is garnered from Dr. Ali's April 1, 2011 letter, which was requested through Plaintiff at the behest of the ALJ. (*See* TR 297-98.)

4

"approximately six months later, his pain began to recur and the patient was referred back to interventional pain management." (TR 297.) Dr. Ali initially did not recommend neurosurgery for Plaintiff's new issues. (TR 297.) After some time, he did recommend a consult with a neurosurgeon, but "he was felt not to be a candidate . . . and neurosurgery . . . recommended interventional pain management and conservative care." (TR 297.)

In April 2010, Dr. Ali completed a Medical Examination Report. (TR 302-304.) Dr. Ali opined that Plaintiff had no mental limitations, and he could "meet his needs in the home." (TR 303.) He indicated that Plaintiff could frequently carry 10 pounds or less, occasionally carry 20 pounds, and should never carry more than 25 pounds. (TR 304.) He noted that Plaintiff could not stand more than 2 hours in a day or sit more than 6 hours in a day. (TR 304.) He noted that Plaintiff should not reach for, push, or pull objects. (TR 304.)

According to Dr. Ali's April 2011 letter, Plaintiff was still not a neurosurgical candidate at that time. He noted that Plaintiff's "overall course is complicated by the fact that he does have underlying depression." (TR 297.) With regard to Plaintiff's RFC, Dr. Ali opined as follows:

> I feel that this patient's back problems would limit his ability to perform any strenuous activity, and the fact that he is on significant narcotic medications throughout the day, which are sedating would also prevent him from performing any tasks that require sustained mental effort. This is also complicated by the fact that he does have underlying depression which is getting better under control."

(TR 298.)

### C. Plaintiff's Functional Report

On May 18, 2009, Plaintiff completed a Functional Report as part of his application for Social Security. (TR 145-152.) In his report, Plaintiff indicated that he rents a room, and he lives alone. (TR 145.) On a typical day, he wakes up around 8:00 a.m., takes his medication, drinks a health shake, and stretches. (TR 145.) He will then relax, watch television, go for a short walk,

5

watch television, or play video games. (TR 145.) Plaintiff also noted that he does his own laundry. (TR 145.)

Plaintiff indicated that he prepares his own meals two or three times a day, but he makes "easier" meals than he used to make. (TR 147.) He also indicated that he cleans his own home, including vacuuming and doing the dishes. He typically does chores twice a week. (TR 147.) Plaintiff noted that he can no longer do yard work except "maybe plant flowers, but not even doing that this year." (TR 148.) Plaintiff indicated that he can drive and that he goes out alone. (TR 148.) He goes shopping in stores for 10 to 15 minutes two to three times a week. (TR 148.) Plaintiff pays his own bills and handles his own finances. (TR 148.)

With regard to hobbies and social activities, Plaintiff writes poetry, plays video games, and collects sports cards. (TR 149.) He talks on the phone, and he has two friends that usually come over and "hang out with [him]" two or three times a month. (TR 149.) Plaintiff attends church every Sunday, but he usually doesn't stay very long because of the pain in his back. (TR 149.)

Plaintiff checked off boxes indicating that he had limitations in lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, memory, completing tasks, following instructions, and using his hands. (TR 150.) He noted that he did not have problems talking, hearing, seeing, concentrating, understanding, or getting along with others. (TR 150.) Plaintiff indicated that he can pay attention for 45 minutes to an hour, he follows written and spoken instructions "very well," he gets along with authority figures "very well," he handles stress "very well," and he handles change "very well," even though something may be confusing at first. (TR 150-51.)

### IV.    ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff met the disability insured status requirements through September 30, 2009; had not engaged in substantial gainful activity since June 20, 2008; and suffered from s/p cervical fusion with minimal degenerative changes, thoracic herniated discs, and mild lumbar disc disease; he did not have an impairment or combination of impairments that met or equaled the Listing of Impairments. (TR 12-14.) The ALJ found that Plaintiff's allegations regarding the extent of his symptoms were not totally credible and that he had "the residual functional capacity to perform light work except he is able to sit, stand and walk for 6 hours in an 8 hour workday; he is able to occasionally climb ramps and stairs but never ladders, ropes, or scaffolds; he is able to frequently balance; he is able to occasionally stoop, kneel, crouch, and crawl." (TR 14-17.) The ALJ found that Plaintiff was unable to perform his past relevant work as a care giver in an elderly home because the demands exceeded the RFC. (TR 17.) And in reliance on Medical-Vocational Guidelines, the ALJ found that there were a significant number of jobs in the national economy that Plaintiff could perform. (TR 17-18.) Therefore, he was not suffering from a disability under the Social Security Act from June 20, 2008, through the date of the ALJ's decision. (TR 18.)

### V.    LAW AND ANALYSIS

#### A.    Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it

is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### B.     Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)     Plaintiff was not presently engaged in substantial gainful employment; and

(2)     Plaintiff suffered from a severe impairment; and

(3)     the impairment met or was medically equal to a "listed impairment;" or

(4)     Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

    **C.**    **Analysis**

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D.Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174). Plaintiff argues that Defendant's

decision should be remanded or reversed for the following reasons: (1) the ALJ erred when he disregarding the limitations provided by Plaintiff's treating physician; and (2) The ALJ erred by not requiring the testimony of a Vocational Expert before finding Plaintiff not disabled.[2]  (*See* docket no. 9.)

### 1.      Weight of the Medical Opinions

The ALJ must give a treating physician's opinion complete deference if it is supported by

---

[2]In his Reply brief, Plaintiff appears to raise a new argument, claiming that new evidence is now available that the ALJ did not have at the time of the hearing, including two new surgeries that occurred in 2011 and 2012.  (*See* docket no. 15.)  In cases where, as here, the Appeals Council declines to review the ALJ's decision, judicial review is limited to the evidence that was part of the record before the ALJ.  *Cotton v. Sullivan*, 2 F.3d 692 (6th Cir. 1993); *Casey v. Secretary*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Wyatt v. Sec'y*, 974 F.2d 680, 685 (6th Cir. 1993).  Further, under 20 C.F.R. § 404.970(b), "[i]f new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision."  Plaintiff's evidence does not related to the period on or before the date of the hearing decision.

Moreover, the "court is confined to review evidence that was available to the Secretary, and to determine whether the decision of the Secretary is supported by substantial evidence." *Wyatt*, 974 F.2d at 685 (*citing Richardson*, 402 U.S. at 401).  The court may still remand the case to the ALJ to consider this additional evidence but only upon a showing that the evidence is new and material and "that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  This is referred to as a "sentence six remand" under 42 U.S.C. § 405(g).  *See Delgado v. Comm'r of Soc. Sec.*, 30 Fed. Appx. 542, 549 (6th Cir. 2002).  The party seeking remand has the burden of showing that it is warranted.  *See Sizemore v. Sec'y of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988).  "A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ."  *Foster*, 279 F.3d at 357 (*citing Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984)).  "[F]or the claimant to satisfy his burden of proof as to materiality, he must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence."  *Sizemore*, 865 F.2d at 711 (*citing Carroll v. Califano*, 619 F.2d 1157, 1162 (6th Cir. 1980)); *see also Cotton v. Sullivan*, 2 F.3d 692, (6th Cir. 1993) ("Where a party presents new evidence on appeal, this court can remand for further consideration of the evidence only where *the party seeking remand* shows that the new evidence is material.")(emphasis added)(citations omitted).  Plaintiff has not even attempted to meet his burden in this regard and merely raises this argument as an afterthought.  Therefore, the Court should deny Plaintiff's Motion to the extent that it requests a sentence-six remand.

clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2). It is equally well settled that the ultimate issue of disability is reserved to the Commissioner and not the treating or examining physician. *Kidd v. Comm'r*, 283 Fed. Appx. 336, 341 (6th Cir. 2008). Thus, when a medical or non-medical source offers an opinion on "an issue reserved to the Commissioner, such as whether the claimant is disabled, the ALJ need not accord that opinion controlling weight." *Id.* (citing *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007)). The opinion of an examining source is generally accorded more weight than is the opinion of a source who did not examine the claimant. 20 C.F.R. § 404.1527(c)(1). The opinion of a state agency medical or psychological consultant is reviewed in the same manner as is the opinion of a nonexamining physician or psychologist. 20 C.F.R. §404.1527(e).

The Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion." 20 C.F.R. § 404.1527(c)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson v. Comm'r*, 378 F.3d 541, 544 (6th Cir. 2004) (citing Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *5 (1996)). If the opinion of a treating source is not afforded controlling weight, an ALJ must apply certain factors in determining what weight to give the opinion, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source. *Wilson*, 378 F.3d at 544 (citation omitted). Even then, a finding that a treating-source medical opinion is not well supported by medically acceptable clinical

11

and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to controlling weight, not that the opinion should be rejected.  Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *4.

Plaintiff argues that the ALJ erred when he "disregarded the medical findings of [Dr. Ali]," even though the findings are supported by Plaintiff's MRI and other medical evidence. (Docket no. 9 at 7.) Plaintiff asserts that the ALJ did not indicate that another medical source was more reliable and that the ALJ's failure to include all of Dr. Ali's limitations resulted in an incomplete RFC. (*Id.* at 7-9.) Defendant argues that the ALJ did rely on Dr. Ali's findings, that the ALJ provided sufficient reason for his treatment of Dr. Ali's findings, and that Dr. Ali's finding's were somewhat contradictory. (Docket no. 12 at 13.) The Court agrees.

Plaintiff's argument rests on the conclusion that Dr. Ali's April 1, 2010 Medical Examination Report (TR 302-304) is dispositive. The ALJ considered that report but noted that Dr. Ali's treatment of Plaintiff lasted only from January 5, 2010, through April 21, 2010. (TR 16.) The ALJ also noted that, as he requested throughout the hearing, neither the April 21, 2010 report nor Dr. Ali's April 1, 2011 letter reflected an onset date "or whether the limitations will last the requisite 12 months." (TR 16.) Therefore, the ALJ found that Dr. Ali's assessment was "not reliable in the context of these proceedings." (TR 16.) Moreover as indicated by Defendant, Dr. Ali's April 2011 letter indicates that Plaintiff was not suffering from his conditions for a consecutive 12-month period and that he could manage his condition with "conservative care." (TR 297.) Dr. Ali also reached a final conclusion that Plaintiff's condition would only "limit his ability to perform strenuous activity." (TR 298.)

Instead, the ALJ relied on the overall record. (TR 17.) He noted that in Plaintiff's one-and-a-half years of treatment, there is no assessment showing a continuous 12 months or more of

12

disability. (TR 16.) And most importantly, the ALJ discussed that "the overall record shows objective clinical findings and a level of daily activity . . . which suggests a greater ability [than that set forth in the medical opinions]." (TR 15.) The ALJ cited Plaintiff's Functional Report, wherein Plaintiff indicated that he generally cares for himself and performs a variety of daily activities. (TR 15.) He also cited to Plaintiff's hearing testimony, wherein Plaintiff acknowledge that he rode in a car for six hours to visit family. (TR 15.) Therefore, the Court finds that the ALJ afforded the appropriate weight to Plaintiff's treating physician's assessment and to the record as a whole; thus, the Court recommends denying Plaintiff's motion with regard to this issue.

### 2. The ALJ's Step-Five Finding

Plaintiff asserts that it was improper for the ALJ to make a determination at step five of the framework without taking testimony from a VE. (Docket no. 9 at 9.) Plaintiff argues that this violates due process because Plaintiff did not have an opportunity to cross-examine the VE; thus, "there is no information on the record whether any of [Plaintiff's] postural limitations prevent him from performing any of the jobs that ALJ (sic) has identified as being a job that [Plaintiff] can perform." (*Id.* at 10.)

Defendant first argues that an ALJ is only precluded from using the guidelines in lieu of a VE's testimony where a claimant "has nonexertional limitations that significantly restrict the range of available work." *Jordan v. Comm'r*, 548 F.3d 417, 424 (6th Cir. 2008). Defendant focuses on the second requirement in *Jordan*, that is, where such limitations are "significant." Plaintiff argues that the ALJ cited to Social Security Ruling 83-10 to indicate that Plaintiff's postural limitations did not create a significant restriction. (Docket no. 12 at 14 (citing TR 18).) Second, Defendant argues, the ALJ limited Plaintiff to light work but also implied that Plaintiff could perform a full range of sedentary work and that the job base for sedentary work is not eroded by postural limitations. (*Id.*

13

at 15 (citing TR 18; SSR 96-9p).) Finally, Defendant argues, even if the ALJ's decision to omit testimony from a VE was error, the error was harmless, and "any remand for this reason would be a pointless formality." (*Id.* at 16.)

The Medical–Vocational guidelines, commonly referred to as "the Grids," are found in the regulations and are a shortcut to eliminate the need for calling a vocational expert. *Hurt v. HHS*, 816 F.2d 1141 (6th Cir.1987). But "[w]hen the claimant does match one of the grid's patterns, then all the grid does is announce that substantial gainful work is available in the national economy for that particular individual; in other words, once a finding is made that the individual can do light work, for example, the grid operates to declare that light work is available." *Kirk v. Secretary of HHS*, 667 F.2d 524, 535 (6th Cir.1981), cert. denied, 461 U.S. 957 (1983). "If a claimant's non-exertional limitations prevent the claimant from doing the full range of work at the designated level, then the Commissioner must come forward with some reliable evidence showing that there remain a significant number of jobs that the claimant can perform, taking into account the claimant's exertional and non-exertional limitations." *Andrews v. Comm'r*, No. 08-12296, 2009 WL 1505791, *7 (E.D. Mich. May 17, 2009) (Hood J.) (citing *Shelman v. Heckler*, 821 F.2d 316, 321-22 (6th Cir. 1987). Non-exertional limitations include "certain mental, sensory, or skin impairments" or "impairments [which] result solely in postural and manipulative limitations or environmental restrictions." 20 C.F.R. Part 404, Subpt. P, App. 2, Section 200.00(e).

Here, the ALJ found that Plaintiff had non-exertional (specifically, postural) limitations including Plaintiff's limited ability to stand or sit during an eight-hour workday and his occasional limitations when required to stoop, kneel, crouch, and crawl. (TR 14.) While the ALJ stated that he used Medical-Vocational Rule 202.20-202.22 as a "framework," he did not site to any evidence showing that there remain a significant number of light jobs that Plaintiff can perform when taking

14

into account these non-exertional limitations. (*See* TR 18.) Thus, if the ALJ had relied only on Plaintiff's ability to perform light work, the Court would agree with Plaintiff.

But the Court agrees with Defendant that the ALJ's decision implies that Plaintiff can also perform a full range of sedentary work. In this regard, the ALJ stated, [T]he functional capacity to perform a full range of light work includes the functional capacity to perform a full range of sedentary work." (TR 18.) Importantly, the ALJ continued, "Approximately 1,600 separate *sedentary* and light unskilled occupations can be identified in eight broad occupational categories, each occupation representing numerous jobs in the national economy." (TR 18 (emphasis added).) As Defendant notes, "[p]ostural limitations or restrictions related to such activities as climbing ladders, ropes, or scaffolds, balancing, kneeling, crouching, or crawling would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work." (Docket no. 12 at 15-16 (citing SSR 96-9p).) Thus, while the ALJ would have been well advised to take testimony from the VE who was present at the time of Plaintiff's hearing, the Court finds that he did not err in relying on the Medical-Vocational Rules in this instance. Therefore, the Court recommends denying Plaintiff's Motion with regard to this issue.

## VI.   CONCLUSION

For the reasons stated herein, Plaintiff's Motion for Remand (docket no. 9) should be DENIED, and Defendant's Motion for Summary Judgment (docket no. 12) should be GRANTED.

### REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections

constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: February 19, 2013      s/ Mona K. Majzoub
                              MONA K. MAJZOUB
                              UNITED STATES MAGISTRATE JUDGE


**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: February 19, 2013      s/ Lisa C. Bartlett
                              Case Manager

16